OPINION
Defendant-appellant Evelyn Dorsey, et al. appeals the January 22, 2001 Judgment Entry entered by the Stark County Court of Common Pleas, which granted a Writ of Restitution to plaintiff-appellee Stark Metropolitan Housing Authority.
 STATEMENT OF THE FACTS AND CASE
In September, 1998, appellant entered into a lease with appellee for the rental of federally subsidized housing. On May 17, 2000, appellee filed a complaint in the Canton Municipal Court, seeking to evict appellant from the premises at 1317 Roe Court, SE, Canton, Ohio. The complaint alleged appellant breached Section 10 of the lease, which provides:
 It is the policy of the Stark Metropolitan Housing Authority that public housing shall not be available to tenants or members of their household who engage in criminal activity, or who have guests or other invitees who engage in such activity. The authority maintains a zero tolerance or One Strike policy regarding criminal activity and drug-related criminal activity. * * * For the purpose of this lease, criminal activity shall include, but not limited to, any of the following serious misconduct:
 (3) * * * or use, of a controlled substance, unless such controlled substance was obtained directly from or pursuant to a valid medical prescription.
* * *
 C. During the term of this lease, no guest of visitor of either Tenant or of any member of the Tenant household shall engage in any criminal activity on the leased premises or on or near the housing development of which the leased premises is part. Unless the Tenant can demonstrate otherwise, it shall be presumed that any person engaging in criminal activity is a guest of a visitor of the Tenant or a member of his/her household, if said criminal activity takes place on the leased premises.
 D. Any of the activity described above in this section shall constitute a serious and clear danger to the health and safety of other tenants and/or authority employees and the authority may issue the Ohio 3-day notice for recovery on the possession of the premises. The authority may terminate the tenancy whether or not the person committing the criminal activity is arrested, charged or convicted by law or whether the Tenant had any knowledge of the activity.
The complaint specifically alleged, on May 1, 2000, the manager-supervisor of the subject residence, Candace Fontes, and a security officer, P. Brookins, observed Tremaine Owens smoking marijuana in appellant's residence. Appellant filed a timely answer and counterclaim. Upon appellant's motion, the Municipal Court transferred the action to the General Division of the Common Pleas Court.
On September 26, 2000, appellee filed an amended complaint, which did not assert any other violations of the lease, but further alleged appellant permitted Tremaine Owens to reside with or frequent her apartment on numerous occasions. The complaint also added Owens had repeatedly used appellant's address as his own and appellee believed Owens resided at the residence. Appellant filed a timely answer to the amended complaint. The matter proceeded to bench trial on December 29, 2000.
The following evidence was adduced at trial. Candace Fontes testified she was conducting routine trash clean-up on May 1, 2000, when she observed Owens at appellant's residence and noticed a strong odor of marijuana. Although Fontes did not actually witness Owens' smoking marijuana, she saw the smoke when she entered the residence. On cross-examination, Fontes noted appellee has a One Strike policy and residents are issued a three-day notice to vacate for any such violation. Fontes stated appellant violated Section 10 of the lease as a result of Owens' smoking marijuana at her residence. She further explained a resident is responsible for the actions and conduct of her guests; therefore, if the resident permits a person into her home, the resident is responsible for the individual's behavior. Fontes acknowledged appellant had sought assistance from management in keeping Owens away from her residence.
Appellant testified she had a doctor's appointment on May 1, 2000, and her friend, Martina Ann Marie Banks, babysat her two children. Before leaving, appellant instructed Banks not to allow Owens into the residence or accept his telephone calls. Appellant explained Banks was aware of the tenuous relationship between herself (appellant) and Owens. While appellant was at her doctor's appointment, she received an emergency telephone call from Banks. Banks, who was very upset, informed appellant she needed to come home immediately. When appellant entered her residence, Banks informed her (appellant) she (Banks) had allowed Owens into the house. Appellant proceeded to telephone appellee and was informed she would be evicted. Thereafter, appellant attempted to discuss the situation with Fontes, however, Fontes refused to listen to appellant and merely advised appellant she would be served with an eviction notice. Appellant stated she asked management to change the locks on her residence on May 2, 2000. She never allowed Owens at her residence any time after May 2, 2000, and made it clear to appellee's staff Owens was not welcome at her residence. Appellant also complained to security about Owens' vehicle being parked near her home.
Martina Banks testified Owens arrived at appellant's residence on May 1, 2000, and informed her he had diapers and formula as well as some money for appellant. Banks knew appellant did not want Owens in the house, but Banks also knew appellant needed the diapers and formula for her children; therefore, she allowed Owens into the residence. Banks went upstairs to gather some belongings for appellant's children. When she returned, she asked Owens when he was going to leave because she was preparing to leave with the children. According to Banks, Owens informed her he was not leaving and was going to wait for appellant because he wanted to discuss some issues with her. As Banks dressed the children in their coats, there was a knock at the door. Banks instructed Owens not the answer the door, but he did. The woman at the door entered the residence and started screaming when Owens informed her appellant was not at home. Banks further testified as she returned downstairs and prior to the knock at the door, she noticed the odor of marijuana.
Via Judgment Entry filed January 22, 2001, the trial court granted appellee a Writ of Restitution.
It is from this judgment entry appellant appeals, raising the following assignments of error:
 THE TRIAL COURT ERRED IN RULING THAT APPELLANT TENANT'S LEASE AUTHORIZED EVICTION OF TENANT FOR A TRESPASSER'S USE OF MARIJUANA ON PUBLIC HOUSING PREMISES WHEN THE TENANT HAD NO KNOWLEDGE OF THE TRESPASSER'S PRESENCE.
 THE TRIAL COURT'S ADMISSION OF LAY TESTIMONY THAT MARIJUANA HAD BEEN SMOKED ON THE SUBJECT PREMISES WAS PLAIN ERROR.
 I
In her first assignment of error, appellant maintains the trial court erred in finding the lease authorized appellee evict her as a result of a trespasser's use of marijuana at her residence.
Following closing statements by the attorneys, the trial court made the following comments on the record:
 THE COURT: The Court will agree [with appellant] that what some individual lists as his address when he is arrested is at best that person's opinion as to what his address is.
 It doesn't mean that it is in fact his address for purposes of this hearing, nor does it really mean that some individual who was responsible for the preparation of an obituary lists an address as a place where people are going to convene, mean that that is in fact the place where that person resides.
 So I want to make it clear that this Court is only allowing that testimony for what was stated there, but not as it relates to whether in fact he was in fact a legal resident at the address.
 There is no question, however, that in fact this individual did frequent that establishment on more than one occasion. Clearly he was there for period of time resulting in the fathering of at least one child there.
 Secondly, there is no question he was there on the date of May 1 and that there were problems which often occur between a father who now has another individual that is maybe taking his place where the mother is now pregnant by another man.
 The indication of whether, how he sees his children if he is so inclined to see his children, the difficulties of dealing with that, the Court doesn't have to go into. It is just a very difficult situation that a mother of two children finds herself in.
 So that's the setting leading up to May 1. Troublesome relationship with this individual who has been at the place. I am satisfied he did come by on more than one occasion.
 The testimony of the officer is that they would see the vehicle, actually see him convinces this Court that in fact he was at the site with or without the blessing of Evelyn Dorsey.
 The difficult thing is that I truly do believe that Evelyn Dorsey has been the victim in many regards of a scoundrel, but I have to put that into context that we have Stark Metropolitan Housing.
 Whether I agree or disagree, and they have provisions in their documents that are zero tolerance. You have a place there, you are given the benefits of being there.
 If something happens there, you are responsible; and it is your responsibility to make sure it doesn't happen. If it happens, that's too bad. That's the policy. I may not agree with it, but I think it is enforceable.
 Unfortunately in this case I think that's exactly what happened. I think she was in fact in a position where more could have been done to keep this person from being at the premises. I understand why more wasn't done.
 Hindsight is 20-20. It did occur. She is responsible for what happened at her place. They have the right, and they are exercising it.
 Whether I agree with it or not, they have the legal right to exercise the right to their eviction remedies.
 As a result of that, this Court finds that they have proven their case. They are entitled to a writ of restitution for the premises, and the Court will so order upon the presentation of a judgment entry. That will be all.
Tr. at 113-116.
As stated supra, appellee's complaint alleged appellant breached her lease by violating Section 10 of said document. Section 10 permits appellee to terminate the tenancy of a resident if a guest or other invitee of that resident engages in certain criminal activity, including the use of illicit substances. As the trial court's afore quoted statement reveals, the trial court recognized appellee's One Strike policy regarding criminal behavior, and based its decision thereon. The trial court appears to have overlooked the requirement Owens must have been appellant's guest or invitee on May 1, 2000, before a violation of Section 10 could have occurred. The trial court was convinced Owens was at the site "with or without the blessing of [appellant]." But it is only a violation if Owens was there with appellant's blessing. In fact, the trial court inferred Owens was not at appellant's residence with her permission on the date in question when it referred to her as "a victim." While the trial court determined appellant was in a position "where more could have been done to keep [Owens] from being at the premises," the fact more could have been done to prevent Owens' presence does not equate to appellant's consenting to his presence on May 1, 2000. Accordingly, we find it was error to conclude appellant violated Section 10 of her lease in the absence of finding Owens was either her guest or her invitee on May 1, 2000.
Appellee adamantly contends the evidence of Owens' repeated presence, prior to and subsequent to May 1, 2000, conclusively establishes Owens was appellant's invitee on May 1, 2000. However, we find the testimony of appellant and Martina Banks belies such a conclusion. We note the trial court did not base its decision on a violation of Section 6 of the lease.[1]
Appellant's first assignment of error is sustained.
 II
In light of our disposition of appellant's first assignment of error, we find appellant's second assignment of error to be moot.
The judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with law and this opinion.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with law and this opinion. Costs assessed to appellee.
[1] Section 6 of the lease reads:
 A. Tenant agrees not to use or to permit the use of the dwelling unit for any purpose other than as a private dwelling unit solely for Tenant and his/her family and/or dependents. Tenant agrees not to assign his/her lease nor to sublet or transfer possession of the premises; nor to give accommodation to boarders or lodgers without the written consent of Management. Permitting anyone other than those listed on the lease to reside in the unit is grounds for eviction. This provision does not exclude reasonable temporary (approximately two weeks) accommodation of guest and visitors. It is mandatory that the Tenant inform Management of guests or visitors.
Appellee filed a second complaint against appellant in Canton Municipal Court based upon a violation of Section 6. Such complaint was subsequently dismissed and was not plead as a cause of action in the instant matter.
By: HOFFMAN, J. and GWIN, P.J. concur. FARMER, J. Dissents.
DSFARMER, J. DISSENTING
DX I
I respectfully dissent from the majority's finding of insufficient evidence that Owens was not a guest or other invitee on May 1, 2000. I believe the correct interpretation of the evidence is that the person authorized to give consent, Martina Ann Marie Banks, permitted Owens to enter the residence and make himself at home (to the point he felt the right to answer the door). I would find Owens was an invitee on the premises and would deny Assignment of Error I.
 II
In Assignment of Error II, appellant claims the trial court erred in permitting a lay witness, Candace Fontes, to testify on the smell of "marijuana" smoke. Generally, rulings on evidence are left to the sound discretion of the trial judge. Under Evid.R. 701, a lay witness is permitted to testify to the rationally based perceptions which are helpful to the trier of fact. Ms. Fontes testified she had training classes in identifying marijuana. T. at 13. This court has consistently recognized in suppression cases that there is a distinctive odor to marijuana that is discernable to a lay person. Based upon these two factors, I would find it was not error to permit Ms. Fontes to testify on the issue of marijuana smoke, I would deny Assignment of Error II.